UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE ANNUITY, WELFARE AND APPRENTICESHIP
SKILL IMPROVEMENT & SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 15, 15A, 15C & 15D, AFL-CIO,
     *by their Trustees James T. Callahan, Thomas A.*
     *Callahan, Michael Salgo and Denise M. Richardson*,
CENTRAL PENSION FUND OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS,
     *by its Chief Executive Officer Michael A. Crabtree*,
INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL 15, 15A, 15C & 15D, AFL-CIO,
     *by its President & Business Manager Thomas A.*
     *Callahan*,

|  |  |
|---|---|
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| -against- | 18-CV-5791-LDH-SJB |

COASTAL ENVIRONMENTAL GROUP INC.,

                        Defendant.
-------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

     The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of

the International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO

("Local 15 Trust Funds"), Central Pension Fund of the International Union of Operating

Engineers ("CPF"), and International Union of Operating Engineers Local 15, 15A, 15C &

15D, AFL-CIO ("International Union") (collectively, "Plaintiffs") commenced this action

on October 17, 2018 against Coastal Environmental Group Inc. ("Coastal

Environmental") for violations of the Employment Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Section 301 of the Labor Management

Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185 *et seq.*, seeking to recover benefit

contributions due under two collective bargaining agreements, plus interest, liquidated

damages, and attorney's fees and costs.  (Compl. dated Oct. 17, 2018, Dkt. No. 1).  On

December 14, 2018, the Clerk of Court entered a default against Coastal Environmental,

(Clerk's Entry of Default dated Dec. 14, 2018, Dkt. No. 8 ("Entry of Default")), and

Plaintiffs filed a motion for default judgment three days later, (Mot. for Default J. filed

Dec. 17, 2018, Dkt. No. 9 ("Pls.' Mot.")).  The Honorable LaShann DeArcy Hall referred

the motion to the undersigned for a report and recommendation on July 26, 2019.

(Order Referring Mot. dated July 26, 2019).  For the reasons described below, the Court

respectfully recommends Plaintiffs' motion for default judgment be granted and

interest, damages, attorney's fees, and costs be awarded as indicated.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Local 15 Trust Funds, administered from 44-40 11th Street, Long Island City,

N.Y., are joint trustee funds under Section 302 of the LMRA, 29 U.S.C. § 186, and multi-

employer/employee benefit plans under Sections 3(3) and 3(37) of ERISA, 29 U.S.C.

§ 1002(3) and (37).  (Compl. ¶¶ 3-4, 8).  They include the Local 15 Annuity Fund, an

employee pension benefit plan that provides retirement income to plan participants,

and the Local 15 Welfare and Apprenticeship Skill Improvement & Safety Funds, which

are welfare benefit plans that provide participants medical, vacation, and training

benefits.  (*Id*. ¶¶ 6-7).  James T. Callahan, Thomas A. Callahan, Michael Salgo, and

Denise M. Richardson, the trustees and fiduciaries of Local 15 Trust Funds, have

brought this suit on behalf of Local 15 Trust Funds.  (*Id*. ¶ 5).

CPF, an employee benefit plan that provides participants retirement income, is

also a joint trustee fund under the LMRA and a multi-employer/employee benefit plan

under ERISA.  (*Id*. ¶¶ 9, 11-12).  CPF maintains its principal place of business in

Washington, D.C. at 4115 Chesapeake Street, N.W.  (*Id*. ¶ 9).  Michael A. Crabtree, the

Chief Executive Officer of CPF and a fiduciary of the plan, has brought this suit on behalf of CPF. (Compl. ¶ 10).

Local 15 Trust Funds and CPF administer their respective plans and benefits in accordance with the relevant trust agreements establishing each benefit plan. (Aff. of James M. Steinberg, Dkt. No. 13 ("Steinberg Aff.") ¶ 7; *see* Agreement and Decl. of Trust of the Annuity Fund, attached as Ex. D to Steinberg Aff., Dkt. No. 13 ("Annuity Fund Trust Agreement"); Agreement and Decl. of Trust Welfare Fund, attached as Ex. E to Steinberg Aff., Dkt. No. 13 ("Welfare Fund Trust Agreement"); Agreement and Decl. of Trust, attached as Ex. F to Steinberg Aff., Dkt. No. 13 ("Apprenticeship Fund Trust Agreement"); Restated Agreement and Decl. of Trust of the Central Pension Fund, attached as Ex. G to Steinberg Aff., Dkt. No. 13 ("Pension Fund Trust Agreement") (collectively, "Trust Agreements")). Local 15 is a labor organization under the LMRA, 29 U.S.C. § 152. (Compl. ¶ 13). Local 15 maintains its principal office at the same address as Local 15 Trust Funds. (*Id.* ¶ 3). Thomas A. Callahan, Local 15's President, has brought this suit on behalf of Local 15. (*Id.* ¶ 14).

Coastal Environmental is a New York corporation with a principal place of business at 264 Sills Road, East Patchogue, N.Y., (*id.* ¶ 15),[1] and is an employer under

---

[1] The Complaint also states that Coastal Environmental is a foreign corporation authorized to do business in New York. (Compl. ¶¶ 16-17). However, the New York Secretary of State's website, of which the Court can take judicial notice, labels Coastal Environmental as a Domestic Business Corporation with the same Sills Road address. *See J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 09, 2018) ("The Court can and does take judicial notice of information from the New York Secretary of State's website.") (citing *Tate v. YRC Worldwide, Inc.*, No. 08-CV-7, 2008 WL 11318316, at *2 (E.D.N.Y. Sept. 23, 2008)); N.Y. Dep't of State, Div. of Corps., State Records & UCC, *Corp. & Bus. Entity Database Search*, https://www.dos.ny.gov/corps/bus_entity_search.html (last visited Aug. 28, 2019).

ERISA, 29 U.S.C. § 1002(5), and the LMRA, 29 U.S.C. § 185, (*id.* ¶ 18). Pursuant to two collective bargaining agreements between Local 15 and the General Contractors Association of New York, Inc. ("GCA")—the Local 15-15A/GCA Agreement ("15-15A Agreement")[2] and the Local 15D/GCA Agreement ("15D Agreement") (collectively, "the Agreements")—Coastal Environmental is required to remit welfare, pension, annuity, apprentice, medical reimbursement, and vacation contributions to Local 15 Trust Funds and CPF based on hours worked by its employees. (Compl. ¶¶ 19-20; *see* Local 15-15A/GCA Agreement, attached as Ex. B to Steinberg Aff., Dkt. No. 13 ("15-15A Agreement"), at 75-79 (Art. XI.B, §§ 1-9); Local 15D/GCA Agreement, attached as Ex. C to Steinberg Aff., Dkt. No. 13 ("15D Agreement"), at 29-39 (Art. XI, §§ 1-12)).[3] It is also required to remit supplemental union and political action committee dues to Local 15. (Compl. ¶ 21; *see* 15-15A Agreement at 79 (Art. XI.B, § 10), 81 (Art. XV); 15D Agreement at 36 (Art. XI, § 8), 39 (Art. XI, § 12)). The 15-15A Agreement applies to Coastal Environmental employees who perform heavy construction work, and the 15D Agreement applies to employees who perform survey work. (Aff. of Thomas A. Callahan dated Dec. 17, 2018, Dkt. No. 11 ("Callahan Aff.") ¶ 3). Coastal Environmental is a party to the Agreements as a result of its membership in the GCA. (Compl. ¶ 19).

---

[2] The Complaint refers to a "Local 15/GCA Agreement." (Compl. ¶ 19). However, Plaintiffs' motion papers refer to the agreement as the "Local 15-15A/GCA Agreement," and that is how the agreement itself is titled. (*See* Steinberg Aff. ¶ 6). The Court refers to this Agreement as the 15-15A Agreement.

[3] The Agreements refer to a Joint Pension Fund of Local 15 instead of CPF; the Joint Pension Fund of Local 15 merged into CPF in 2000. (Pls.' Mem. of Law, Dkt. No. 14 ("Pls.' Mem.") at 3 n.2; *see also* Suppl. Aff. of James M. Steinberg dated Aug. 27, 2019, Dkt. No. 17 ("Suppl. Aff.") ¶ 4).

Pursuant to their rights under the Agreements, Plaintiffs conducted an audit of Coastal Environmental's records for the period of July 1, 2014 to December 31, 2017 to ensure the accuracy of its payments to Local 15 Trust Funds and CPF. (*Id.* ¶¶ 23, 34). The results of the audit, completed September 18, 2018, revealed that Coastal Environmental failed to make fringe benefit contributions, supplemental union dues payments, and political action committee payments, totaling $12,430.55[4] under the 15-15A Agreement and $6,480.00[5] under the 15D Agreement, in violation of the Agreements and Section 515 of ERISA, 29 U.S.C. § 1145. (*Id.* ¶¶ 24, 29, 35, 40; *see* Audit Report, attached as Ex. H to Steinberg Aff., Dkt. No. 13 ("Audit")). Coastal Environmental has failed to pay the outstanding balance. (*Id.* ¶¶ 25-26, 30, 36-37, 41; *see also* Aff. of Catherine Chase dated Dec. 17, 2018, Dkt. No. 10 ("Chase Aff.") ¶ 9). The Complaint seeks a judgment against Coastal Environmental for the amount due, plus interest, for breach of the Agreements[6] and for the amount due, plus interest, liquidated damages, attorney's fees, and costs for violations of ERISA pursuant to 29 U.S.C. § 1132. (Compl. at 10-11).

---

[4] This consists of $11,639.62 of fringe benefit contributions to Local 15 Trust Funds and CPF, including interest, and $790.93 of supplemental union dues and political action committee payments to Local 15. (Compl. ¶¶ 25-26).

[5] This consists of $6,102.31 of fringe benefit contributions to Local 15 Trust Funds and CPF, including interest, and $377.69 of supplemental union dues and political action committee payments to Local 15. (*Id.* ¶¶ 36-37).

[6] "[A] suit alleging a breach of a [collective bargaining agreement] is properly understood as one brought pursuant to the LMRA." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. NAMOW, Inc.*, No. 17-CV-1469, 2018 WL 1440545, at *4 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (Mar. 22, 2018).

Coastal Environmental was served with a copy of the summons and Complaint on October 30, 2018 by delivery to Laurie Pepe, the Human Resource Manager authorized to accept service. (Summons Returned Executed filed Nov. 5, 2018, Dkt. No. 5). Despite this service, Coastal Environmental failed to appear, answer, or otherwise respond to the Complaint. Plaintiffs sought a certificate of default against Coastal Environmental, (Req. for Certificate of Default dated Nov. 28, 2018, Dkt. No. 7), which was granted by the Clerk of Court on December 14, 2018, (Entry of Default). Plaintiffs moved for default judgment on December 17, 2018, (Pls.' Mot.), which Judge DeArcy Hall referred to the undersigned for report and recommendation, (Order Referring Mot. dated July 26, 2019).

Plaintiffs' motion for default judgment seeks the following damages under the 15-15A Agreement: (1) $9,956.33 in principal for ERISA contributions, $1,683.29 in interest through August 28, 2019 plus interest through the date of judgment, and $995.63 in liquidated damages; and (2) $790.93 for non-ERISA contributions and interest at a rate of 9% from July 1, 2015 through the date of judgment. (Statement of Damages, attached as Ex. 1 to Pls.' Mot., Dkt. No. 9 at 1). Under the 15D Agreement, Plaintiffs seek: (1) $5,128.58 in principal for ERISA contributions, $973.73 in interest through August 28, 2018 plus interest through the date of judgment, and $512.86 in liquidated damages; and (2) $377.69 for non-ERISA contributions and interest at a rate of 9% from July 1, 2015 through the date of judgment. (*Id.* at 2). Plaintiffs also seek $2,775.00 in attorney's fees, $1,268.25 in auditor's fees, and $510.00 in filing and service costs. (*Id.*). Coastal Environmental failed to respond to the motion, despite being served with it at its last known business address. (Certificate of Service dated Dec. 17, 2018, Dkt. No. 15).

<u>DISCUSSION</u>

I.     <u>Entry of Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against Coastal Environmental on December 14, 2018. (Entry of Default). The next question, before reaching liability or damages, is whether Coastal Environmental's conduct is sufficient to warrant entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Coastal Environmental to respond to the Complaint demonstrates the default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). It had sufficient notice of the present litigation because it was properly served with a summons and Complaint, which were served on its Human Resource Manager on October 30, 2018. (Summons Returned Executed). The motion for default judgment and supporting papers were also served via mail. (Certificate of Service).[7] Notwithstanding this notice and service, Coastal Environmental did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default

---

[7] Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the last known business address of the defaulting party (if not an individual). Loc. Civ. R. 55.2(b)-(c). Plaintiffs did not submit a copy of the Clerk's certificate of default or a proposed default judgment order with their motion papers, nor did they mail a proposed default judgment order to Coastal Environmental. (*See* Certificate of Service). However, courts have broad discretion to overlook such non-compliance. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Because the non-compliance here is minor and would not prevent Coastal Environmental from receiving notice of the motion, Plaintiffs' failure to comply fully with Local Rule 55.2 is excused. *See, e.g.*, *Gustavia Home, LLC v. Vaz*, No. 17-CV-5307, 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019) ("Plaintiff did provide notice of its request for default and motion for default judgment to each of the Defaulting Defendants, and the complaint itself provides fair notice of the kind of judgment that Plaintiff seeks[.] Under these . . . circumstances, the Court will excuse Plaintiff's failure to abide by Local Civil Rule 55.2.").

judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Coastal Environmental did not appear and did not present evidence of such a defense.

> [W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted.

*Id.* (quotations and citations omitted); s*ee, e.g.*, *Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether . . . defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, Plaintiffs would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Dkt. No. 18 (Jan. 26, 2009); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors permit entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded in such a judgment.

II.    <u>Liability</u>

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2688.1 (3d ed. 2017).

Plaintiffs have asserted two causes of action under Section 515 of ERISA, one pertaining to the 15-15A Agreement and one to the 15D Agreement, and two causes of action under Section 301 of the LMRA, again pertaining to each of the Agreements. (*See* Compl. ¶¶ 22-43). Section 515 of ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms . . . of a collectively bargained agreement shall . . . make such contributions[.]" 29 U.S.C. § 1145. Section 301 of the LMRA provides a cause of action against an employer in an industry affecting commerce for the "violation of contracts between [the] employer and a labor organization." 29 U.S.C. § 185(a). "Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement."

*Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *3 (E.D.N.Y.

Aug. 30, 2011) (citing *Brown v. C. Volante Corp.*, 194 F.3d 351, 354 (2d Cir. 1999),

*report and recommendation adopted*, 2011 WL 5402898 (Nov. 4, 2011).

Plaintiffs have asserted valid causes of action under Section 515 of ERISA and

Section 301 of LMRA.  Coastal Environmental is alleged to be an employer in an

industry affecting commerce within the meaning of ERISA and the LRMA.  (Compl.

¶ 18).  Local 15 Trust Funds and CPF are multi-employer/employee benefit plans as

defined by ERISA, (*id.* ¶¶ 8, 12), and both are "joint trustee funds established by various

trust indentures pursuant to Section 302 of the LMRA," (*id.* ¶¶ 4, 9).[8]  By virtue of its

membership in the GCA, Coastal Environmental is bound by the Agreements negotiated

by Local 15 and the GCA, which require it to remit contributions, supplemental union

dues, and political action committee payments to Plaintiffs.  (*Id.* ¶¶ 19-21; *see also* 15-

15A Agreement at 75-79 (Art. XI.B, §§ 1-9); 15D Agreement at 29-39 (Art. XI, §§ 1-12)).[9]

Plaintiffs also allege Coastal Environmental failed to make the required contributions

from July 1, 2014 through December 31, 2017, as indicated in the audit report completed

on September 18, 2018.  (*Id.* ¶¶ 24, 29, 35, 40; see Audit).

---

[8] Local 15 is a labor organization under the LMRA, 29 U.S.C. § 152.  (Compl. ¶ 13).

[9] The Agreements list the relevant pension fund as the "Joint Pension Fund of the International Union of Operating Engineers, Locals No. 15, 15A, 15C, 15D" rather than the CPF.  (*See* 15-15A Agreement, Article XI-B, Section 2; 15D Agreement, Article XI, Section 2).  As explained in footnote 3, the Joint Pension Fund of Local 15 merged into CPF in 2000, (Pls.' Mem. at 3 n.2), and has continued to collect contributions and forward them to CPF pursuant to a full service agreement.  (Suppl. Aff. ¶ 4; *see also* Callahan Aff. ¶ 6).  Because the Agreements bind members of the GCA to the individual trust agreements, (*see* 15-15A Agreement at 79 (Art. XI.B, § 11); 15D Agreement at 38 (Art. XI, § 10)), the Court concludes that Coastal Environmental is bound by the Pension Fund Trust Agreement associated with CPF.

These allegations are sufficient to establish Costal Enviornmental's liability in an ERISA and LMRA action. *See, e.g.*, *Trs. of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318, 2018 WL 4268907, at *3 (E.D.N.Y. Aug. 8, 2018), *report and recommendation adopted*, 2018 WL 4266038 (Sept. 5, 2018); *Sullivan*, 2011 WL 5401987, at *3 ("Plaintiffs allege that Marble Unique Corp. failed to make contributions to the Funds in accordance with the [collective bargaining agreement ('CBA')]. Marble Unique Corp.'s failure to make the required contributions constitutes a violation of ERISA. . . . [P]laintiffs allege that Marble Unique Corp. failed to pay required dues and assessments to Local 1 as required by the CBA. This failure to pay dues and assessments constitutes a breach of CBA, and thus, Marble Unique Corp. is liable under Section 301 of the LMRA."); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA, 29 U.S.C. § 1145[.] Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

III.    Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with

reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

A plaintiff who has established liability under Section 515 of ERISA is entitled to an award of: "1) the amount of unpaid contributions; 2) interest on the unpaid contributions; 3) liquidated damages; 4) reasonable attorney's fees and costs, and 5) such other legal and equitable relief as the court deems appropriate." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 257 (E.D.N.Y. 2007) (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1504 n.2 (2d Cir. 1995); *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO v. NAMOW, Inc.*, No. 17-CV-1469, 2018 WL 1440545, at *6 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (Mar. 22, 2018). "An award of damages is also available under LMRA for those contributions not covered by ERISA but unpaid or paid late in violation of a [CBA] or other contract." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operation Engineers, Local 15, 15A, 15C, 15D, AFL-CIO v. A.G.*

*Constr. Corp.*, No. 13-CV-3590, 2014 WL 354647, at *4 (E.D.N.Y. Jan. 31, 2014)

(adopting report and recommendation). "LMRA damages are limited to those

permitted in the relevant CBA and trust agreements." *Id.*

   A.   Delinquent Contributions

   Plaintiffs seek damages of $15,084.91 for delinquent ERISA contributions

($9,956.33 under the 15-15A Agreement and $5,128.58 under the 15D Agreement) and

$1,168.62 for delinquent non-ERISA contributions ($790.93 under the 15-15A

Agreement and $377.69 under the 15D Agreement). (*See* Statement of Damages at 1-2).

In support of these figures, Plaintiffs submitted the audit report for the period of July 1,

2014 to December 31, 2017 and an Affidavit from Lisa Madeiras ("Madeiras"), a payroll

audit manager at the accounting firm of Schultheis & Panettieri, LLP retained by Local

15 Trust Funds. (*See* Audit; Aff. of Lisa Madeiras filed Dec. 17, 2018, Dkt. No. 12

("Madeiras Aff.") ¶ 1). Madeiras provided a detailed explanation of how the audit was

conducted, namely by comparing Coastal Environmental's payroll records with Local 15

Trust Funds' stamp redemption reports for the period to calculate the total hours for

which dues or contributions were owed. (Madeiras Aff. ¶¶ 3-4).[10] The total hours were

then multiplied by the applicable rates, resulting in the total amounts due. (*Id.* ¶ 5; *see

also* Local Union 15 & 15A Wage Scale Schedule, attached as Ex. I to Steinberg Aff., Dkt.

No. 13; Local Union 15D Wage Scale Schedule, attached as Ex. J. to Steinberg Aff., Dkt.

No. 13).

   The Court has reviewed the audit and independently calculated and confirmed

the amounts due based on hours worked and rates provided by the Wage Scale

---

[10] The auditor gave Coastal Environmental "credit for any fringe benefit stamps purchased but not redeemed by the employees/members." (Madeiras Aff. ¶ 4).

Schedules. Having no basis to conclude that the underlying rates or hours worked are incorrect, the Court finds that Plaintiffs' calculations are accurate and recommends awarding a total of $15,084.91 for delinquent ERISA contributions and $1,168.62 for delinquent non-ERISA contributions for the period of July 1, 2014 to December 31, 2017. *See, e.g.*, *A.G. Constr.*, 2014 WL 354647, at *5 ("The auditors reviewed the employer's general ledgers, cash dis[b]ursement journals, corporate tax returns, and invoices to determine if there were unreported earnings of individuals for work performed and their report includes schedules supporting their findings. Assuming, as I do, the factual detail of the hourly contribution rates and unreported hours to be correct, the auditors' calculations appear accurate. I therefore recommend that the Local 15 Trust Funds be awarded $5636.00 for unpaid contributions for the period of July 1, 2007 through July 30, 2011.") (quotations and citations omitted) (alterations omitted); *Bricklayers Ins. & Welfare Fund v. Primo Brick, Inc.*, No. 11-CV-5742, 2013 WL 2120338, at *5 (E.D.N.Y. Apr. 3, 2013) (recommending award of unpaid contributions based on an audit that "was prepared by comparing gross wages in the payroll records with Form 941, WT4-B, NYS-4, W-2 totals; comparing wage rates in employer's payroll records with hourly rates set forth in union wage schedules; comparing total payroll hours for all bricklayers with total hours reported to the Funds; and comparing hours reported on show steward reports to total payroll hours for each bricklayer") (quotations omitted), *report and recommendation adopted*, 2013 WL 2120318 (May 15, 2013).

B.    Interest

Plaintiffs seek $2,657.02 in interest through August 28, 2018 on the delinquent ERISA contributions ($1,683.29 under the 15-15A Agreement and $973.73 under the 15D Agreement) and additional interest at a rate of 6% per year from August 29, 2018

through the date of judgment. (Statement of Damages at 1). Plaintiffs also seek interest on the delinquent non-ERISA contributions at a rate of 9% under N.Y. C.P.L.R § 5004 from an intermediary date of July 1, 2015 through the date of judgment. (*Id.* at 1-2).

As to the interest for delinquent ERISA contributions, "Section 502 of ERISA provides that 'interest on unpaid contributions shall be determined by using the rate provided for under the plan, or if none, the rate prescribed under section 6621 of Title 26.'" *Primo Brick, Inc.*, 2013 WL 2120338, at *5 (quoting 29 U.S.C. § 1132(g)(2)); *see generally Hudson Steel Fabricators*, 68 F.3d at 1508.[11] Here, the Trust Agreements provide that interest on delinquent contributions is to be calculated at a rate of 6% per year. (Annuity Fund Trust Agreement at 20 (Amendment to Art. V, § 6); Welfare Fund Trust Agreement at 29 (Amendment to Art. VII, § 8); Apprenticeship Fund Trust Agreement at 16 (Amendment to Art. V, § 6)).[12] Plaintiffs submitted an affidavit explaining their interest calculations, (*see* Madeiras Aff. ¶¶ 6-7), and the Court has

---

[11] On August 20, 2019, the Court asked Plaintiffs to explain why Coastal Environmental was bound by amendments to the Annuity, Welfare, and Apprenticeship Trust Fund Agreements because it did not appear that the GCA or Coastal Environmental was a party to the amendments. (*See* Order dated Aug. 20, 2019); *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, No. 18-CV-857, --- F.3d ----, 2019 WL 3917567, at *5 (2d Cir. Aug. 20, 2019) ("To impose a plan-provided interest rate on a delinquent employer, . . . [t]he employer must be a signatory—or otherwise have agreed to bind itself—to the plan document (here, a Trust Agreement)."). Each of these Trust Agreements can be amended by the Trustees, (*see* Annuity Fund Trust Agreement at 18 (Art. XIV); Welfare Fund Trust Agreement at 22 (Art. XII); Apprenticeship Trust Fund Agreement at 13 (Art. X)), and each was signed by Trustee Frank DiMenna, who is also a representative of the GCA, (Suppl. Aff. ¶ 3). The Court therefore concludes that Coastal Environmental, as a member of the GCA, is bound by the amendments to the Annuity, Welfare, and Apprenticeship Trust Fund Agreements.

[12] The Pension Fund Trust Agreement actually provides for an interest rate of 9% per year. (Pension Fund Trust Agreement at 13 (Art. IV, § 4.5(c))). However, because the auditor calculated interest under this Trust Agreement at 6%, Plaintiffs only seek interest at that rate. (Pls.' Mem. at 10; *see also* Steinberg Aff. ¶ 10).

independently confirmed those calculations.  (*See* Audit Report).  The Court has also

calculated the daily interest rate for the Clerk of Court to calculate interest from August

29, 2018 through the date of judgment in the chart below.

Local 15-15A Daily Interest[13]

| Fund | Interest |
| --- | --- |
| Welfare | $0.41 |
| Pension | $0.29 |
| Annuity | $0.64 |
| Apprentice | $0.03 |
| MRA | $0.07 |
| Vacation | $0.20 |
| **Total** | **$1.64** |

Local 15D Daily Interest

| Fund | Interest |
| --- | --- |
| Welfare | $0.21 |
| Pension | $0.17 |
| Annuity | $0.32 |
| Apprentice | $0.01 |
| MRA | $0.04 |
| Vacation | $0.10 |
| **Total** | **$0.85** |

Plaintiffs are, therefore, entitled to $2,657.02 in interest through August 28, 2018

on the delinquent ERISA contributions, plus $2.49 per day through the date of

judgment.  *See, e.g.*, *A.A. Danzo Sanitation*, 2018 WL 4268907, at *5 (recommending

interest at a rate provided for in the trust agreements); *Primo Brick, Inc.*, 2013 WL

2120338, at *5 ("Pursuant to the CBA, the applicable interest rate on delinquent

contributions to the Funds is 10% per annum.  Therefore, 10% interest is due to

plaintiffs on defendant's delinquent contributions to the Funds.") (citation omitted);

*LaBarbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 352 (E.D.N.Y. 2009)

---

[13] The interest for Local 15-15A represents the combined interest on contributions due June 30, 2015, (*see* Audit Report at 2), and contributions due June 30, 2016, (*see id.* at 3).

("Under the terms of the Trust Agreement and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for the period of delinquency. The CBA and the Trust Agreement provide for interest to be calculated at the rate of 18% per annum for the period of delinquency. Having reviewed the Jones, Rasalingam, and Cody Declarations and supporting documentation, the Court finds plaintiffs' calculation of interest to be accurate. Further, pursuant to 29 U.S.C. § 1132(g)(2) and the Trust Agreement, plaintiffs are entitled to additional interest, calculated at the same rate, up to the date that judgment is finally entered.").

"With respect to the Non-ERISA Plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the Court's discretion and at a rate within the Court's discretion." *Omega Commc'n Servs.*, 543 F. Supp. 2d at 162; *accord Primo Brick, Inc.*, 2013 WL 2120338, at *5 (citing *Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 446-47 (2d Cir. 1975)). "'In awarding interest, a court may look to state law to determine an appropriate rate.'" *Sullivan*, 2011 WL 5401987, at *7 (quoting *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-873, 2011 WL 1100111, at *4 (E.D.N.Y. Mar. 22, 2011)). New York C.P.L.R. § 5004 provides that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." N.Y. C.P.L.R. § 5004; *see also N.Y.C. Dist. Council of Carpenters v. Trinity Phoenix Constr. Corp.*, No. 17-CV-609, 2018 WL 1521862, at *5 (E.D.N.Y. Jan. 10, 2018) ("Where interest is awarded, the common practice among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law.") (quotations omitted), *report and recommendation adopted*, Order Adopting R. & R. dated Mar. 12, 2018.

Plaintiffs seek interest on the delinquent non-ERISA contributions at a rate of 9% per year beginning on July 1, 2015 through the date of judgment. (Statement of Damages at 1-2; Steinberg Aff. ¶ 13(i)). Plaintiffs argue pre-judgment interest should accrue from July 1, 2015 because it "is the midpoint date that this portion of the scheduled deficiency arose." (Pls.' Mem. of Law, Dkt. No. 14 ("Pls.' Mem.") at 16).

New York law permits interest to be computed "from a single reasonable intermediate date" when damages occurred at various times. N.Y. C.P.L.R. § 5001(b); *see Bricklayers Ins. & Welfare Fund v. Golden Vale Constr., Inc.*, No. 06-CV-1028, 2007 WL 3232244, at *7 (E.D.N.Y. Oct. 31, 2007) (adopting report and recommendation that calculated interest from a reasonable date under § 5001(b) in an ERISA default judgment). "[S]ection 5001 grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). The Court finds July 1, 2015, the approximate midpoint date of the delinquency period,[14] to be a reasonable date to begin calculating this additional interest. *See, e.g.*, *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.*, No. 08-CV-3036, 2009 WL 5821676, at *5 n.4 (E.D.N.Y. Oct. 8, 2009) ("New York law, which federal courts frequently apply in calculating interest in ERISA cases, provides that when damages are incurred over a period of time, prejudgment interest may be calculated from a single reasonable intermediate date. Therefore, plaintiffs' calculation from the midpoint of the due dates is appropriate.") (quotations and citations omitted), *report and recommendation adopted in relevant*

---

[14] Even though the audit period covered July 1, 2014 to December 31, 2017, the delinquent contributions were between July 1, 2014 and June 30, 2016. (*See* Audit at 1-3). July 1, 2015 is the midpoint of these dates.

*part*, 2010 WL 456870 (Feb. 3, 2010); *Alston v. Northstar La Guardia LLC*, No. 10-CV-3611, 2010 WL 3432307, at *3-4 (S.D.N.Y. Sept. 2, 2010) (report and recommendation) ("Consistent with [N.Y. C.P.L.R. § 5001(b)], courts deciding damage awards in ERISA cases routinely calculate prejudgment interest from a midpoint date in the delinquency period, which in this case would be June 25, 2009.  Accordingly, we calculate the interest owing based on the midpoint date of June 25, 2009.") (citations omitted), *report and recommendation adopted*, Order dated Sept. 27, 2010, Dkt. No. 11.

On this basis, the Court has calculated the daily interest as follows: $0.28 in supplemental union dues ($0.19 under the 15-15A Agreement and $0.09 under the 15D Agreement) and $0.01 in political action committee payments ($0.004 under the 15-15A Agreement and $0.002 under the 15D Agreement).  Plaintiffs are therefore entitled to pre-judgment interest on delinquent non-ERISA contributions at a rate of $0.29 per day from July 1, 2015 through the date of judgment.

C.    Liquidated Damages

Plaintiffs seek liquidated damages on the delinquent ERISA contributions at a rate of 10%, totaling $1,508.49 ($995.63 under the 15-15A Agreement and $512.86 under the 15D Agreement).  (*See* Statement of Damages at 1-2; Steinberg Aff. ¶ 13(d)).

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan*, 2011 WL 5401987, at *6 (citing 29 U.S.C. § 1132(g)(2)(C)); *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (Mar. 12, 2019).  The Trust Agreements provide for liquidated damages at 10% of the amount owed.  (Annuity

Fund Trust Agreement at 20 (Amendment to Art. V, § 6); Welfare Fund Trust Agreement at 29 (Amendment to Art. VII, § 8); Apprenticeship Fund Trust Agreement at 16 (Amendment to Art. V, § 6).[15]  The amount of ERISA contributions owed under both the 15-15A Agreement and 15D Agreement is $15,084.91, and thus Plaintiffs are entitled to $1,508.49 in liquidated damages.[16]  *See, e.g.*, *Primo Brick, Inc.*, 2013 WL 2120338, at *6 ("Here, plaintiffs' CBA provides for liquidated damages in the amount of twenty percent of the unpaid contributions if the Funds are required to sue to collect delinquent contributions.  Twenty percent of $46,458.82, which is the total amount of contributions owed to the Funds at the commencement of this lawsuit, is $9,291.76.  Therefore, I respectfully recommend that plaintiffs should be awarded liquidated damages in the amount of $9,291.76.") (citations omitted); *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796, at *10 (E.D.N.Y. Mar. 6, 2012) ("The CBAs provide for liquidated damages in an amount equal to 20% of the delinquent contributions for each plan.  Therefore, the 20% rate pursuant to the CBAs and ERISA will be utilized in assessing liquidated damages.") (citations omitted), *report and recommendation adopted*, 2012 WL 1078470 (Mar. 30, 2012).

---

[15] Again, this is with the exception of the Pension Fund Trust Agreement, which actually provides for liquidated damages of 20%.  (Pension Fund Trust Agreement at 12 (Art. IV, § 4.5(b))).  However, "to maintain consistency between the[ ] plaintiffs," Plaintiffs only seek 10% in liquidated damages under the Pension Fund Trust Agreement.  (Pls.' Mem. at 10).

[16] The requested amount of $1,508.49 is actually less than the amount of interest owed on delinquent ERISA contributions, which totaled $2,657.02 even without considering the daily interest through judgment.  (*See supra* pp. 15-20).  Although Plaintiffs would be entitled to the greater amount—as between the interest on unpaid contributions and what is provided in the Trust Agreements—Plaintiffs only request $1,508.49.  (*See* Pls.' Mem. at 10-11); 29 U.S.C. § 1132(g)(2)(C).

IV.    Attorney's Fees and Costs

Plaintiffs seek $2,775.00 in attorney's fees for 7.5 hours of work on the case, all of which were billed by James M. Steinberg ("Steinberg") at a rate of $370 per hour. (Steinberg Aff. ¶¶ 14, 16; *see also* Statement of Damages at 2).  Plaintiffs also seek $510.00 in costs, consisting of the $400 filing fee and a $110 process server fee. (Statement of Damages at 2; Steinberg Aff. ¶ 13(g)).  Finally, Plaintiffs seek $1,268.25 in auditor's fees.  (Statement of Damages at 2; Steinberg Aff. ¶ 13(f)).

A.    Attorney's Fees

ERISA provides for recovery of reasonable attorney's fees upon a judgment enforcing payment of delinquent contributions.  29 U.S.C. § 1132(g)(2)(D); *Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) (adopting report and recommendation) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement."); *see, e.g.*, *Omega Commc'n Servs.*, 543 F. Supp. 2d at 165 (awarding attorney's fees in an ERISA default judgment).

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.* at 184.  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, Mem. & Order dated Mar. 19, 2008, Dkt. No. 10.  The number of hours spent on a lawsuit are considered unreasonable if they are

excessive, redundant, or unnecessary. *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation). "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388 (Sept. 11, 2015).

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award. "[R]easonable hourly rates in this district for ERISA matters have ranged from $300 to $450 for partners[.]" *Id.* at *6. However, "courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range." *Id.* (quotations omitted); *accord D. Gangi Contracting Corp.*, 2019 WL 1130729, at *8. Steinberg has been practicing this field of law since 1995, (Steinberg Aff. ¶ 14), and he appears to be a partner at his firm.[17] He cites two recent cases where courts in this District have awarded him an hourly rate of $360 or $370. (*See* Pl.'s Mem. at 12-13); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. BKS-NY, LLC*, No. 18-CV-967, Order dated June 8, 2018, Dkt. No. 17 (awarding Steinberg an hourly rate of $370); *Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Local 15, 15A, 15C & 15D, AFL-CIO v. Barbella Envtl.*

---

[17] Steinberg never states that he is a partner, but the name of his law firm is Brady McGuire & Steinberg. (Steinberg Aff. ¶ 1).

*Tech., Inc.*, No. 17-CV-4397, 2018 WL 4403393, at *8 (E.D.N.Y. Mar. 1, 2018) (awarding Steinberg an hourly rate of $360), *report and recommendation adopted*, 2018 WL 4388451 (Sept. 14, 2018). The Court thus finds an award of $370 per hour to be reasonable. *See, e.g.*, *NAMOW, Inc.*, 2018 WL 1440545, at *8 (finding $370 per hour for work completed by Steinberg to be reasonable).

Turning next to the reasonableness of the time expended, Steinberg spent 1.5 hours drafting and filing the Complaint and 6.0 hours drafting and filing the default judgment papers, for a total of 7.5 hours. (Hours Expended by Counsel, attached as Ex. L to Steinberg Aff., Dkt. No. 13 ("Time Sheet")). Courts have found similar numbers of hours reasonable in ERISA default judgment cases. *See, e.g.*, *D. Gangi Contracting Corp.*, 2019 WL 1130729, at *9 (finding 10.7 hours to be reasonable in an ERISA default judgment case).

However, "[a] party seeking such an award must support its application by submitting contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Omega Commc'n Servs.*, 543 F. Supp. 2d at 163 (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Plaintiffs submitted a reconstructed time sheet, rather than contemporaneous billing records. (*See* Time Sheet; Pls.' Mem. at 11 ("The documentation submitted by counsel . . . is a reconstructed record of original time sheets made contemporaneously with the services performed[.]")). While this could be sufficient to award attorney's fees, *see, e.g.*, *A.G. Constr.*, 2014 WL 354647, at *6 (citing *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991)), the Court is wary to do so because Plaintiff filed the exact same time sheet in another case in support of its attorney's fees. (*See* Hours Expended by Counsel, attached as Ex. L to Aff. of James M.

Steinberg dated Apr. 3, 2018, No. 18-CV-967, Dkt. No. 12 ("BKS-NY, LLC Time Sheet")). The only differences are the dates given for the work performed. (*Compare id.*, *with* Time Sheet).

Further, the time sheet bills a block of 6.0 hours in which Steinberg "[d]rafted, revised and finalized default judgment motion papers including memorandum of law and supporting affidavits." (Time Sheet). Block billing could result in a reduction of a fee award. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) ("[B]lock billing is most problematic where large amounts of time (*e.g.*, five hours or more) are block billed; in such circumstances, the limited transparency afforded by block billing meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent."); *e.g.*, *Charles v. City of N.Y.*, No. 13-CV-3547, 2014 WL 4384155, at *5-6 (S.D.N.Y. Sept. 4, 2014) (recognizing no *per se* ban on block billing, but finding a reduction in hours warranted because "the entries . . . cram together an entire day's work into a single entry, such that it is impossible to discern how much time was spent on each task.").

The Court recommends that Steinberg submit his contemporaneous billing records before an award of attorney's fees is granted. *Cf. Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721, 2019 WL 312149, at *11 (E.D.N.Y. Jan. 3, 2019) (denying attorney's fees for lack of contemporaneous time records, but giving attorney an opportunity to renew the request), *report and recommendation adopted*, 2019 WL 291145 (Jan. 23, 2019); *Feltzin v. Union Mall LLC*, No. 16-CV-2303, 2019 WL 4022292, at *5 n.8 (E.D.N.Y. Mar. 12, 2019) (requiring supplemental information before granting attorney's fees request).

B.      Costs

Plaintiffs seek reimbursement for costs consisting of $400 in court filing fees and
$110 in service of process fees.  (*See* Statement of Damages at 2; Steinberg Aff. ¶ 13(g)).

ERISA provides for a recovery of costs.  29 U.S.C. § 1132(g)(2)(D); *Detore Elec.
Constr. Co.*, 2012 WL 1077796, at *12 ("An award of reasonable costs is mandatory in a
successful action to recover delinquent contributions[.]").  Ordinarily, plaintiffs may
recover "[c]osts relating to filing fees, process servers, postage, and photocopying."
*Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d
260, 269 (E.D.N.Y. 2008).  Only those costs that are tied to "'identifiable, out-of-pocket
disbursements'" are recoverable.  *Moon v. Gab Kwon*, 99-CV-11810, 2002 WL 31512816,
at *8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930,
933-34 (2d Cir. 1987)).

Filing fees are recoverable without supporting documentation if verified by the
docket.  *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2
(E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot v. Music
Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (noting
that the filing fee is "a fact of which the Court can take judicial notice"), *report and
recommendation adopted*, 2017 WL 1906902 (May 9, 2017).  Although Plaintiffs did not
submit an invoice for the clerk's filing fee, the docket indicates the filing fee was paid.
(Entry dated Oct. 17, 2018, Dkt. No. 1 (clerk's entry reflecting payment of $400 filing
fee)).  Plaintiffs are, therefore, awarded the $400 filing fee.  *See, e.g.*, *John v. DeMaio*,
No. 15-CV-6094, 2016 WL 7469862, at *12 (E.D.N.Y. Sept. 29, 2016) (awarding Plaintiff
the filing fee based on judicial notice of the docket), *report and recommendation
adopted*, 2016 WL 7410656 (Dec. 22, 2016).

Process server fees are also recoverable but must be supported by documentation. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) ("[F]ailure to provide adequate documentation of costs incurred will limit, or even defeat, recovery."), *report and recommendation adopted*, Order Adopting R. & R. dated Oct. 18, 2017; *Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016). Plaintiffs provided a process server receipt indicating the cost of service was $110. (*See* Service Invoice, attached as Ex. K to Steinberg Aff., Dkt. No. 13). The Court finds it appropriate to award this cost.

Therefore, the Court recommends an award of $510 in total costs.

C.     Audit Fees

Finally, Plaintiffs seek $1,268.25 in auditor's fees. (Statement of Damages at 2; Steinberg Aff. ¶ 13(f)).

"Although 29 U.S.C. § 1132(g)(2) does not expressly provide for an award of audit fees, . . . courts have used section 1132(g)(2)(E), which provides for such other legal or equitable relief as the court deems appropriate, as a basis for awarding audit fees." *L & M Larjo Co.*, 2006 WL 2795348, at *8 (quotations omitted); *see* 29 U.S.C. § 1132(g)(2)(E). This is especially true when agreements between the parties provide for an award of audit fees. *See id.*; *e.g.*, *Martone v. HST Roofing, Inc.*, No. 03-CV-4165, 2007 WL 595054, at *4 (E.D.N.Y. Feb. 22, 2007) (adopting report and recommendation).

The Trust Agreements provide that Coastal Environmental is responsible for auditor's fees when an auditor discovers a deficiency in contributions. (Annuity Fund Trust Agreement at 20 (Amendment to Art. V, § 6); Welfare Fund Trust Agreement at 29 (Amendment to Art. VII, § 8); Apprenticeship Fund Trust Agreement at 16 (Amendment to Art. V, § 6); Pension Fund Trust Agreement at 12-13 (Art. IV, §§ 4.5(a), (e))). Plaintiffs have submitted an invoice of the audit costs indicating auditors worked a total of 12.55 hours and charged a total of $1,268.25. (*See* Payroll Audit Invoice, attached as Ex. A to Madeiras Aff., Dkt. No. 12). The Court finds the requested rate to be well within the range generally awarded in ERISA default judgment cases and therefore recommends awarding Plaintiffs $1,268.25 in audit fees. *See, e.g.*, *Gesualdi v. MBM Indus., Inc.*, No. 10-CV-2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (awarding $4,260 in audit fees); *Martone*, 2007 WL 595054, at *4 (awarding $4,940 in audit fees); *L & M Larjo Co.*, 2006 WL 2795348, at *8 (awarding $2,587.50 in audit fees).

<u>CONCLUSION</u>

For the reasons described above, the Court respectfully recommends that default judgment be entered against Coastal Environmental, and Coastal Environmental be ordered to pay the following:

1. $15,084.91 in delinquent ERISA contributions;

2. $1,168.62 in delinquent non-ERISA contributions;

3. $2,657.02 in interest on delinquent ERISA contributions through August 28, 2018, plus interest calculated by the Clerk of Court from August 29, 2018 through the date of judgment at a rate of $2.49 per day, (*see supra* p. 17);

4. Interest on delinquent non-ERISA contributions as calculated by the Clerk of Court from July 1, 2015 through the date of judgment at a rate of $0.29 per day, (*see supra* p. 20);

5. $1,508.49 in liquidated damages;

6. $510 in costs; and

7. $1,268.25 in auditor's fees.

This totals $22,197.29, plus interest of $2.49 per day from August 29, 2018 through the date of judgment on delinquent ERISA contributions and interest of $0.29 per day from July 1, 2015 through the date of judgment on delinquent non-ERISA contributions. The Court also respectfully recommends Plaintiffs be directed to submit contemporaneous billing records before any attorney's fees are awarded.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.") (quotations omitted).

Plaintiffs are directed to serve a copy of this Report and Recommendation on Coastal Environmental and file proof of such service on the record.

SO ORDERED.
*/s/ Sanket J. Bulsara* August 30, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York